UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BUDGET RENT A CAR SYSTEM, INC.
and ACE AMERICAN INSURANCE
COMPANY,**

        **Plaintiffs,**

v.                                                                      **Case No: 6:17-cv-993-Orl-41GJK**

**PATRICK SHEA, SANDY MORFORD
and GRACIELA VALLEY,**

        **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on the remaining issues presented in Plaintiffs' Motion for Summary Judgment (Doc. 67), Defendant Patrick Shea's Motion for Summary Judgment (Doc. 69), and Defendant Graciela Valley's Motion for Summary Judgment (Doc. 75). This cause is also before the Court on Plaintiffs' Motion to Strike Defendant Shea's Untimely-Disclosed Expert Witness (Doc. 91), Defendant Patrick Shea's Motion to Strike Affidavit of Ruth Vacha and Affidavit of Officer Joshua Eddy (Doc. 92), Defendant Patrick Shea's Motion to Preclude Testimony from Plaintiffs' Undisclosed Witness Ruth Vacha (Doc. 95), Defendant Patrick Shea's Motion in Limine to Preclude Evidence of the November 21, 2013 Laboratory Report (Doc. 97), and Plaintiff's Motion in Limine Re: Defendant Shea's Untimely-Disclosed Expert Witness (Doc. 98).

**I.    BACKGROUND**

In October 2013, Defendant Patrick Shea rented a vehicle from Plaintiff Budget Rent A Car System, Inc. ("Budget"), (Shea Aff., Doc. 70-1, ¶ 7), and purchased Supplemental Liability

Insurance ("SLI") along with his rental, (Rental Agreement, Doc. 67-3, at 1). The SLI Policy (Doc. 67-4) was issued by Plaintiff Ace American Insurance Company ("Ace").

On October 27, 2013, Shea was operating the rental vehicle when he collided with another vehicle. (Doc. 70-1 ¶ 14). The occupants of the other vehicle were killed in the collision. (Investigative Report, Doc. 67-6, at 5, 25).[1] Shea was taken to the hospital where a blood serum specimen was drawn. (*Id.* at 2, 8).[2] As a result, Shea was charged with and pleaded no contest to two counts of DUI Manslaughter. (Shea Criminal R., Doc. 67-7, at 2); Fla. Stat. § 316.193(3)(c)(3).[3] Suit was brought on behalf of the deceased's estates against Shea, (*see generally* Morford Compl., Doc. 67-1; Alastra Compl., Doc. 67-2), and an insurance claim was made with Plaintiffs, (*see* July 3, 2014 Letter, Doc. 82-1, at 1). Plaintiffs denied the claim because Shea was under the influence of alcohol, which violated the terms of the Rental Agreement. (*Id.* at 2).

Plaintiffs then filed this declaratory judgment action, seeking a declaration that the Rental Agreement and the SLI Policy are void, and therefore, Plaintiffs are not responsible for providing coverage for any claims related to the motor vehicle accident. The Court previously addressed the parties' arguments regarding the interpretation of the SLI agreement between Shea, Budget, and Ace. (See generally November 6, 2018 Order, Doc. 105). The only dispositive issue remaining before the Court is whether the exclusions from coverage apply here. Specifically, Plaintiffs point to the exclusions in paragraph 15 of the Rental Agreement, which excludes coverage if the car is used "while the driver is under the influence of alcohol or a controlled substance"; "for conduct

---

[1] Shea objects to the admissibility of the Investigative Report. However, Shea does not dispute facts cited above. (*See* Third Am. Compl., Doc. 48, ¶ 13; Answer, Doc. 51, ¶ 13).

[2] Again, although Shea objects to the Investigative Report, he does not dispute these facts. (Doc. 82 at 18).

[3] Although Shea categorizes the Criminal Record as "unauthenticated" in his Response, he appears to only object to Plaintiffs' assertion that he was convicted of the crime when Shea actually pleaded no contest. (Resp., Doc. 82, at 18–19). The Criminal Record could be admitted at trial in a number of ways, and it supports Shea's assertion that he pleaded no contest.

that could properly be charged as a felony or misdemeanor"; or "recklessly or while overloaded." (Doc. 67-3 at 4). The Court deferred ruling on this issue until it had an opportunity to address Plaintiffs' and Shea's various motions to strike and motions in limine in order to determine what evidence it could rely upon. A hearing on those evidentiary motions was held on November 7, 2018. (*See generally* Min. Entry, Doc. 109). The Court will first address the evidentiary issues and then address the remaining issue on summary judgment.

## II. ANALYSIS

### A. Evidentiary Issues

There are three items of evidence at issue: (1) the FDLE Toxicology Report (Doc. 67-6 at 2); (2) testimony by Ruth Vacha, including her Affidavit (Doc. 90-1) submitted with the summary judgment briefing; and (3) the expert testimony by Barry Funck, including his Affidavit (Doc. 83), submitted with the summary judgment briefing. Additionally, although not the subject of any independent motions practice, Shea challenges the admissibility of the witness statements contained in the criminal investigation report. Each issue will be discussed in turn.

#### 1. *Toxicology Report*

In their initial disclosures, Plaintiffs listed the "Volusia County State Attorney's Office's criminal file regarding the charges brought against Patrick Shea arising from the subject motor vehicle accident." (Pls.' Initial Disclosures, Doc. 92-1, at 5). The Toxicology Report is contained in that file. Thus, Defendants have been on notice of its existence and the possibility that Plaintiffs would rely on it since that time. Additionally, the Toxicology Report is signed by "Ruth E. Vacha Senior Crime Laboratory Analyst Toxicology Section." (Doc. 67-6 at 2). Shea argues that Plaintiffs cannot introduce the Toxicology Report because Plaintiffs cannot authenticate it and because it is unreliable hearsay.

With regard to admissibility, Shea argues that Plaintiffs must call a witness to authenticate the Report—namely Vacha, who conducted the testing and signed the report. Because Vacha was

not listed as a witness in Plaintiff's Initial Disclosures, however, Shea argues that they cannot do so. Plaintiffs assert that the Toxicology Report is self-authenticating under Federal Rule of Evidence 902(1). For the Toxicology Report to be self-authenticating under that Rule, it must contain a seal of the State of Florida and a signature purporting to be an execution or attestation. Fed. R. Evid. 902(1). The Toxicology Report has a sufficient signature, but the copy provided to the Court does not contain a seal. (Doc. 67-6 at 2). At the hearing, however, Plaintiff's counsel indicated that the copy of the Toxicology Report contained in the Volusia County State Attorney's Office criminal file does have a seal.

Even if the Toxicology Report is not self-authenticating, however, Plaintiffs are permitted to utilize Vacha to authenticate the document despite failing to identify her in their Rule 26(a) Initial Disclosures. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Here, the failure to disclose Vacha for the limited purpose of authenticating the Toxicology Report was harmless. First, it cannot be a surprise to Defendants that Plaintiffs are relying on the Toxicology Report given that the issue of Shea's intoxication is at the center of this dispute. Second, as noted, Defendants had notice of and access to the Toxicology Report—which identifies Vacha as the laboratory analyst who conducted the toxicology testing—since the beginning of this litigation.

It is also worth noting that Defendants do not appear to genuinely dispute the Toxicology Report's authenticity, instead focusing on the technicalities of whether Plaintiffs can jump through the procedural hurdles necessary to introduce it. Given the harmlessness of allowing Vacha to authenticate the document, the Court will not allow technicalities to impede a determination of the substantive issues in this case. Shea's authenticity objection to the Toxicology Report is overruled.

Shea also argues that the Toxicology Report is inadmissible hearsay. Plaintiffs assert that it is an admissible record of regularly conducted activity under Federal Rule of Evidence 803(6).

Under that Rule, a "record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay" if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Shea does not dispute that the Toxicology Report satisfies subsections (A) through (D), but he argues that subsection (E) prohibits its introduction. Namely, Shea argues that his expert—Barry Funck—provided an expert opinion that the Toxicology Report was unreliable, and therefore, it is inadmissible.[4] However, Shea's attack on the Toxicology Report goes to the weight of the evidence, not its admissibility. Specifically, Funck opines that the Toxicology Report did not take into consideration the fact that the blood sample used was a serum sample, which Plaintiffs dispute given that the Report explicitly acknowledges that a "serum specimen" was used. (Doc. 67-6 at 2).[5] It is also worth noting that the Toxicology Report contains a certification that "the analyses were conducted . . . in accordance with the provisions of Chapter 11D-8, Florida

---

[4] As explained below, Funck's expert testimony will not be permitted in this matter. That fact alone is sufficient to deny Shea's motion to exclude the Toxicology Report because his entire argument in that regard is based on Funck's opinion. Nevertheless, as explained herein, even if Funck's opinion were considered on this matter, the Toxicology Report is admissible.

[5] Funck also states that the Toxicology Report is inconsistent with other record evidence, such as statements of medical personnel that they did not smell alcohol on Shea's breath. This is the type of argument better addressed through the presentation of competing evidence and cross examination, not by excluding the evidence altogether.

Administrative Code." Chapter 11D-8 is part of the statutory and regulatory scheme enacted to standardize blood alcohol testing, and when those rules are followed, the results can "give rise to criminal presumptions of impairment." *Goodman v. Fla. Dep't of Law Enf't*, 238 So. 3d 102, 108 (Fla. 2018); Fla. Stat. § 316.1934(c). Although these presumptions are rebuttable, the fact that Vacha certified that she complied with these regulations gives the Toxicology Report sufficient indicia of reliability to be admitted under Federal Rule of Evidence 803(c).

### 2. Funck's Expert Testimony

Shea seeks to admit the expert opinions of Barry Funck, a forensic scientist, to testify regarding Shea's intoxication—or lack thereof—at the time of the collision. Shea's disclosure of expert reports in this case were due by March 5, 2018. (Case Management and Scheduling Order, Doc. 25, at 1). Discovery closed on April 16, 2018. (*Id.*). Shea did not disclose Funck as a potential expert witness or provide a required expert report prior to the deadline to do so or even prior to the close of discovery. Indeed, Shea did not disclose Funck as a potential expert witness until Shea filed his Response to Plaintiffs' Motion for Summary Judgment on June 18, 2018—three months after the expert disclosure deadline and two months after the close of discovery. (*See generally* Resp., Doc. 82; Funck Aff., Doc. 83). Shea claims that Funck is only offered as a rebuttal to Plaintiffs' expert, Vacha, who Shea alleges he was not aware of until Plaintiffs filed their Motion for Summary Judgment. There are multiple problems with Shea's argument.

First, Plaintiffs are not offering any expert testimony from Vacha or anyone else. Plaintiffs are relying on the Toxicology Report, which was disclosed to Shea in September 2017. Thus, Shea's argument that he is entitled to an untimely expert disclosure because Plaintiffs untimely disclosed Vacha as an expert is without merit. Additionally, Shea's argument that he was blindsided by the fact that Plaintiffs were going to rely on the Toxicology Report is equally without merit. As noted, Shea was aware of the Toxicology Report and the fact that Plaintiffs may rely on

it since the outset of this case.[6] Moreover, the issue of whether Shea was intoxicated at the time of the collision is the central factual issue in this matter, and it was the basis upon which Plaintiffs denied coverage under the SLI Policy. Finally, Shea's feigned surprise that the Toxicology Report was included in Plaintiff's summary judgment motion and his claim that he was unaware of a need for an expert prior to that time is further belied by the fact that Shea retained Funck on or before April 16, 2018—a month prior to the filing of any summary judgment motions. (Funck Invoice, Doc. 95-3, at 11).

As noted above, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26(a). Shea has provided absolutely no reason why Funck was not timely disclosed; There is no substantial justification for the untimely disclosure. *Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, No. 6:08-cv-2165-Orl-28GJK, 2011 WL 1135139, at *6 (M.D. Fla. Mar. 4, 2011) (quotation omitted) *adopted by* 2011 WL 1157993 (M.D. Fla. Mar. 28, 2011). ("Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact.").

Additionally, the untimely disclosure is certainly not harmless. One of the considerations in determining harm is whether the opposing party is surprised by the expert opinion. *See Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (citation omitted) *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006) ("[E]xpert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . .");

---

[6] Considering the Toxicology Report was part of Shea's criminal prosecution, it is not feasible to claim that he was unaware of it or of the fact that it was contained in the criminal prosecution file, which was disclosed in Plaintiffs' Initial Disclosures.

*Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012). Plaintiffs were certainly surprised by Shea's expert disclosure—there had been no indication prior to Shea's Response that Shea intended to call any expert. Further, at this point in the proceedings, the only way to remedy the harm would be to continue this case for a significant amount of time because Plaintiffs would have to retain their own expert and then both experts would have to be deposed. Shea failed to explain why such a delay would be warranted. Accordingly, Shea will not be permitted to utilize Barry Funck as an expert, his Affidavit (Doc. 83) will be stricken, and the Court will not consider his opinions for summary judgment purposes.

### 3. Vacha's Expert Testimony

As explained above, Plaintiffs do not intend to call Vacha to elicit any expert testimony, and they have offered no such testimony in support of their Motion for Summary Judgment. Plaintiffs only sought to offer her as an expert if Shea was permitted to offer Funck. Because Funck's opinions will not be considered, this request is moot.

### 4. Witness Statements

Shea argues that the Court cannot consider the witness statements contained in the Port Orange Police Department, Traffic Homicide Investigation File (Doc. 67-6) on summary judgment. Federal Rule of Civil Procedure 56(c)(4) permits the use of affidavits or declarations if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." All of the witness statements explain what each witness personally observed, and those witnesses could testify to such facts at trial. Additionally, the statements are notarized and signed by the affiants, who swore that "all information provided in the . . . affidavit is true and correct to the best of [their] knowledge." (Doc. 67-6 at 29–40). Thus, the witness statements comply with Rule 56(c)(4) and will be considered by the Court for summary judgment purposes.

**B.** **Summary Judgment**

The full factual background and summary judgement standard are set forth in this Court's previous Order addressing most of the summary judgment issues, (Doc. 105 at 1–4), and is incorporated herein. The only issue remaining is whether an exclusion to coverage applies here.

As noted, coverage is excluded if the rental vehicle is used "while the driver is under the influence of alcohol or a controlled substance" or "for conduct that could properly be charged as a felony or misdemeanor."[7] In this case, these two exclusions overlap because Plaintiffs allege that Shea was under the influence of alcohol and that he engaged in conduct that could be and was properly charged as DUI manslaughter. Shea asserts that there is an issue of fact regarding whether he was actually intoxicated. In support of his argument, Shea cites a conclusory statement in his Affidavit, where he avers that he was not "driving under the influence of alcohol that impaired [his] judgment or [his] driving ability in any way." (Doc. 70-1 ¶ 15). This statement is contradicted by all of the other relevant evidence. Specifically, it is contradicted by the Toxicology Report showing that his blood alcohol concentration was over the legal limit and the witness statements, which indicate that Shea "appeared to be very intoxicated" at a restaurant immediately prior to the collision, (Doc. 67-6 at 35), and that he "appeared drunk" after the collision, (*id.* at 34). Thus, Shea's conclusory statement does not create a genuine issue of material fact. *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. 2010) ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Regardless, summary judgment in favor of Plaintiffs is also appropriate under the second exclusion because there is no issue of fact as to whether Shea engaged in conduct that could properly be charged as a felony or misdemeanor. The Toxicology Report shows that, at the time

---

[7] Because the Court concludes that coverage is excluded under the above-referenced exclusions, it need not address whether the reckless driving exclusion applies.

of the collision, Shea's blood alcohol concentration was 0.115 grams—plus or minus .005 grams—of alcohol per 100 milliliters of blood. Even varying downward for the possibility that the test was off by .005 grams, the Report still indicates that Shea's blood alcohol concentration was 0.11. Operating a motor vehicle with a blood alcohol concentration of 0.08 or more is per se criminal conduct. Fla. Stat. § 316.193(1)(b); *Cardenas v. State*, 867 So. 2d 384, 389–90 (Fla. 2004) (noting proof of a blood alcohol level over the .08 limit in § 316.193(1)(b) creates "strict liability" under the DUI statute). Thus, Shea's claim that his faculties were not impaired at the time of the collision is irrelevant to the issue of whether he committed a crime. Therefore, because there is no issue of fact that Shea was engaged in conduct that could properly be charged as a felony or misdemeanor, the damages that arose as a result of that conduct are excluded from SLI coverage.

### III. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The remaining issues on Plaintiffs' Motion for Summary Judgment (Doc. 67) **GRANTED** in favor of Plaintiffs.

2. The remaining issues on Defendant Patrick Shea's Motion for Summary Judgment (Doc. 69) and Defendant Graciela Valley's Motion for Summary Judgment (Doc. 75) are **DENIED**.

3. Plaintiffs' Motion to Strike Defendant Shea's Untimely-Disclosed Expert Witness (Doc. 91) is **GRANTED**.

4. Defendant Patrick Shea's Motion to Strike Affidavit of Ruth Vacha and Affidavit of Officer Joshua Eddy (Doc. 92) is **DENIED in part** and **DENIED as moot in part**. It is denied insofar as it addresses the Vacha Affidavit and denied as moot insofar as it addresses the Eddy Affidavit.

5. Defendant Patrick Shea's Motion to Preclude Testimony from Plaintiffs' Undisclosed Witness Ruth Vacha (Doc. 95) is **DENIED in part** and **DENIED as**

**moot in part**. It is denied insofar as it seeks to prohibit Vacha from testifying regarding the authenticity of the Toxicology Report and denied as moot insofar as it seeks to exclude her offering expert opinions.

6. Defendant Patrick Shea's Motion in Limine to Preclude Evidence of the November 21, 2013 Laboratory Report (Doc. 97) is **DENIED**.

7. Plaintiff's Motion in Limine Re: Defendant Shea's Untimely-Disclosed Expert Witness (Doc. 98) is **GRANTED**.

8. The Clerk is directed to enter a declaratory judgment as follows:

    a. Plaintiff Budget Rent A Car System, Inc. is liable for damages resulting from the October 27, 2013 motor vehicle collision involving Defendant Patrick Shea up to the minimum financial responsibility limits.[8]

    b. Budget Rent A Car System, Inc. is not liable for any damages above the minimum financial responsibility limits resulting from the October 27, 2013 motor vehicle collision involving Defendant Patrick Shea under the Supplemental Liability Insurance purchased at the time of his rental.

    c. Plaintiff Ace American Insurance Company is not liable for any damages resulting from the October 27, 2013 motor vehicle collision involving Defendant Patrick Shea under the Supplemental Liability Insurance purchased at the time of his rental

9. The trial status conference set for Thursday, November 15, 2018, is **CANCELLED**.

10. The Clerk is directed to close this case.

---

[8] This liability is discussed in the Court's previous Order. (Doc. 105 at 8–11, 16).

**DONE** and **ORDERED** in Orlando, Florida on November 13, 2018.



Copies furnished to:

Counsel of Record